UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
        :
MPEG LA, L.L.C,        :
        :
        Plaintiff,        :        15-CV-3997 (JMF)
        :
        -v-        :        <u>OPINION AND ORDER</u>
        :
TOSHIBA AMERICA INFORMATION SYSTEMS,        :
INC., et al.,        :
        :
        Defendants.        :
        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff MPEG LA, L.L.C. ("MPEG") filed this case in New York Supreme Court, asserting breach of contract and unjust enrichment claims against Toshiba America Information Systems, Inc. ("TAIS") and Toshiba America Consumer Products, L.L.C ("TACP"), subsidiaries of the electronics manufacturer Toshiba Corporation. MPEG is the administrator of "patent pools," arrangements through which companies can pay royalties in exchange for licenses to use a large number of patents rather than having to obtain separate licenses from each individual patent holder. MPEG alleges that TACP breached their patent pool licensing contract by failing to pay royalties, and that TAIS — which later merged with TACP — was unjustly enriched by manufacturing products using the patents in the pool without compensating MPEG. TAIS removed the case to this Court, and MPEG now moves to remand it back to state court. In addition, TAIS moves to dismiss all claims against TACP on the ground that it is a non-existent entity lacking the capacity to be sued. For the reasons that follow, MPEG's motion to remand is DENIED and TAIS's motion to dismiss the claims against TACP is GRANTED.

## BACKGROUND

The following facts are taken from the Complaint and assumed to be true for the purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

MPEG, a limited liability company based in Colorado, "administers license agreements for pools of patents essential to the manufacture of products incorporating certain standards and technologies."  (Notice of Removal (Docket No. 1), Ex. A ("Compl.") ¶¶ 2, 6; Mem. L. Supp. Pl.'s Mot. To Remand (Docket No. 14) ("Pl.'s Mem.") 2-3).  Through a pool, MPEG receives nonexclusive, worldwide licenses from patent holders and, in turn, sublicenses the patents to others.  (Compl. ¶ 10).  The Complaint explains the arrangements as follows:

> By entering into a license agreement with MPEG LA for a particular patent pool, a licensee can manufacture and sell products using any or all of the pooled patents in exchange for the payment of royalties.  MPEG LA collects the royalties for the benefit of the various patent holders contributing to the patent pool as licensors to MPEG LA.  While any licensee is free to enter into separate license agreements with the individual patent holders, the licensee may avail itself of the convenience of the single pooled license and substantially reduce its transaction costs by entering into the portfolio license with MPEG LA for the entire patent pool.

(*Id.* ¶ 6).  The pool relevant to this case, for standards and technologies related to the manufacturing of televisions, is memorialized in the Advanced Television Systems Committee Patent Portfolio License (the "ATSC Contract").  (*Id.* ¶ 8).  On November 6, 2008, MPEG and TACP entered into the ATSC Contract, through which TACP agreed to pay royalties in exchange for a worldwide, nonexclusive sublicense to make and sell any "ATSC Receiver Product," defined as "a product, device, converter or thing or portion thereof in whatever form capable of demodulating and decoding an over-the-air, R[adio] F[requency] terrestrial broadcast signal in compliance with" certain standards.  (*Id.* ¶¶ 8, 11-18).

The Complaint alleges that TACP submitted royalty statements and paid royalties to MPEG through the end of 2010, but "underreported and underpaid . . . millions in royalties" for television units manufactured and sold in Mexico. (*Id.* ¶¶ 26-29). TAIS submitted the last royalty statement to MPEG, for the final quarter of 2010, in February 2011. (*Id.* ¶¶ 27, 30). That same month, TACP "merged with and into" TAIS, leaving TAIS as the sole "surviving entity." (*Id.* ¶ 4; *see id.* ¶¶ 23-25). "Pursuant to the Merger Agreement and by operation of law," the Complaint alleges, "TAIS succeeded to the debts, liabilities, and duties of TACP under the ATSC Contract. Section 13 of the Merger Agreement expressly provides that 'all debts, liabilities, and duties of [TACP AND TAIS] shall [after the effective date] attach to TAIS . . . .'" (*Id.* ¶ 24 (alterations in original)). Since the merger, neither TAIS nor TACP has submitted royalty statements or made royalty payments to MPEG pursuant to the ATSC Contract. (*Id.* ¶¶ 30-31). TAIS, however, "continued and continues" to manufacture and sell "substantial quantities" of products falling under the ATSC Contract, "for which millions in royalties are owed to MPEG LA under the ATSC Contract." (*Id.* ¶ 31).

On or about April 20, 2015, MPEG filed this case in New York Supreme Court, alleging breach of the ATSC Contract and unjust enrichment. (*Id.* ¶¶ 34-45). On May 26, 2015, TAIS removed the case to this Court, contending that the Court has federal question and patent jurisdiction over MPEG's unjust enrichment claim, pursuant to Title 28, United States Code, Sections 1331 and 1338, and supplemental jurisdiction over MPEG's contract claim, pursuant to Title 28, United States Code, Section 1367. (Notice of Removal ¶¶ 5-11). (In its Notice of Removal, TAIS also suggested that there "may" be diversity jurisdiction (*id.* ¶¶ 12-13), but it has since abandoned that suggestion as the parties are apparently not diverse. (Mem. L. Supp. Def.'s Mot. To Dismiss Toshiba America Consumer Products, L.L.C., Prejudice ("Def.'s Mem.")

(Docket No. 25) 1, 4).)  As noted, MPEG moves to remand the case back to state court; it also seeks fees and costs, contending that TAIS had no colorable basis to remove the case to federal court.  (Pl.'s Mem. 13-14).  TAIS moves to dismiss all claims against TACP, on ground that TACP is a non-existent entity and thus lacks the legal capacity to be sued.  (Def.'s Mem. 2-3).

## MPEG'S MOTION TO REMAND

The Court begins, as it must, with MPEG's motion to remand, which turns on whether any claims in the case "arise[] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, or, more particularly, "under any Act of Congress relating to patents," *id.* § 1338(a).[1]  As a general matter, such jurisdiction extends "only [to] those cases in which a well-pleaded complaint establishes either that federal [or patent] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [or patent] law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983); *see also Gunn v. Minton*, — U.S. —, 133 S.Ct. 1059, 1064 (2013) (noting that the Court has "interpreted the phrase 'arising under' in [Sections 1331 and 1338] identically," and has applied its "§ 1331 and § 1338(a) precedents interchangeably").  At the same time, a "plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'"  *Romano v. Kazacos*, 609 F.3d 512, 518-19 (2d Cir. 2010) (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475

---

[1]  TAIS does not contend that MPEG's contract claim raises a federal question, and for good reason.  *See, e.g.*, *Deats v. Joseph Swantak, Inc.*, 619 F. Supp. 973, 981 (N.D.N.Y. 1985) (noting that contract claims to collect patent royalties arise under state, not federal, law and citing cases).  Nevertheless, there is no dispute that, if the Court has jurisdiction over the unjust enrichment claim, it may exercise supplemental jurisdiction over the contract claim pursuant to Section 1367, as the claim involves the same products, the same patents, and the same parties.  (*See* Pl.'s Mem. 10-11; Def's. Mem. Law Resp. Pl.'s Mot. To Remand (Docket No. 22) ("Def.'s Resp."); 14; Mem. L. Further Supp. Pl.'s Mot. To Remand Opp'n Def. Toshiba Am. Information Sys., Inc.'s Mot. To Dismiss Toshiba Am.Consumer Prods., L.L.C. Prejudice (Docket No. 29) ("Pl.'s Reply") 5-12).  Accordingly, the Court limits its discussion to whether it has jurisdiction over the unjust enrichment claim.

(1998)); *see Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) ("[A] plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."). Applying that principle, the Supreme Court has held that, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The doctrine — known as the "substantial federal-question doctrine" — "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*; *see generally In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392-94 (S.D.N.Y. 2014).

Pursuant to the substantial federal-question doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. In *Grable,* the leading modern case on the doctrine, the Supreme Court found federal jurisdiction proper in part because the federal issue in dispute — whether a plaintiff in a quiet title action had received proper notice from the Internal Revenue Service of the sale of his seized property — "appear[ed] to be the only legal or factual issue contested in the case." 545 U.S. at 315. Further, and importantly, the Court found that "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation" because "it is the rare state quiet title action that involves contested issues of federal law." *Id.* at 319. Since *Grable*, the Supreme Court has emphasized that the doctrine confers federal jurisdiction in only a "special and small category" of cases, *Empire*

5

*Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and that if the federal issue presented is not "a nearly pure issue of law," but rather "is fact-bound and situation-specific," federal jurisdiction is not appropriate, *id.* at 700-01 (internal quotation marks omitted).

Applying those standards here, the Court concludes that MPEG's unjust enrichment claim raises a substantial federal question and, thus, that TAIS's removal was proper.  Under New York law (which the parties agree applies, *see* Pl.'s Mem. 8; Def.'s Resp. 5), a claim for unjust enrichment requires a showing "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also, e.g.*, *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012).  Here, MPEG alleges that TAIS "benefited by acting as if it had a patent pool license with MPEG LA, *i.e.*, that it was 'under the umbrella of the protection of the ATSC Contract'" and "it [did] so at the expense of MPEG LA which had nonetheless provided this umbrella of protection but was not adequately compensated for doing so."  (Pl.'s Mem. 8 (citing Compl. ¶¶ 41-44)).  Despite MPEG's assertions to the contrary, to prevail on that claim, it must necessarily prove infringement of one or more of the patents in the patent pool; after all, the value or resource MPEG contends that TAIS has exploited is nothing more than the collection of the relevant patents.  (*See* Compl. ¶¶ 1, 40-45).  That is, the only way MPEG can prove that TAIS benefited at its expense is by showing that it used (and therefore infringed) a patent in the pool.

That fact distinguishes MPEG's claim from breach of contract cases found not to raise federal patent questions because the claims turned on interpretation or application of a term in the contract, and infringement or non-infringement was not the determining factor.  *See, e.g.*, *Nanomedicon, LLC v. Research Found. of N.Y.*, 784 F. Supp. 2d 153, 158 (E.D.N.Y. 2011)

(remanding where resolution of the breach of contract and tortious interference claims did "not require a court to determine any issue of patent construction or validity," but only the scope of the parties' agreement); *Discovision Assocs. v. Fuji Photo Film Co.*, No. 07-CV-6348 (PAC), 2007 WL 5161825, at *5-6 (S.D.N.Y. Oct. 29, 2007) (remanding where one possible construction of the parties' contract meant that a breach had occurred when the defendant produced certain products, whether or not that implicated the relevant patents); *Design Sci. Toys, Inc. v. McCann*, 931 F. Supp. 282, 283 (S.D.N.Y. 1996) (remanding where a patent was the property in dispute but determination of the plaintiff's claims turned on contract law rather than infringement).  As one court put it in similar circumstances, if TAIS benefited unjustly from sale of the relevant products, "it is because that enrichment infringed one of [MPEG's] rights, and such a right could derive only from the contract — in which case the unjust enrichment claim cannot stand — or from the patent laws — in which case the unjust enrichment claim is really just a patent infringement claim."  *Crye Precision LLC v. Duro Textiles, LLC*, No. 15-CV-1681 (DLC), — F. Supp. 3d —, 2015 WL 3751658, at *8 (S.D.N.Y. June 16, 2015) (citation omitted).  Indeed, if it were otherwise, "plaintiffs bringing patent infringement claims could simply style them as claims for unjust enrichment to avoid" federal jurisdiction.  *Id.*

Thus, MPEG's unjust enrichment claim "necessarily raise[s]" a question of patent law.  *Gunn*, 133 S. Ct. at 1065; *see, e.g.*, *Deats*, 619 F. Supp. at 981-82 ("Since the unjust enrichment question would have to be answered in the context of a federal patent law claim . . . this claim must be viewed as arising under federal law."); *cf. Briarpatch*, 373 F.3d at 306 ("Under plaintiffs' theory of the case, the act that allegedly satisfies the second and third elements of unjust enrichment is the act of turning Jones' novel and Malick's screenplay into a motion picture.  This act would, in and of itself, infringe the adaptation rights protected by [federal

7

copyright law] (assuming these rights belong to plaintiffs)."). In addition, the question appears to be "actually disputed," as TAIS denies that it has manufactured and sold products (that is, infringed patents) within the scope of the ATSC Contract, (*compare* Compl. ¶¶ 31, 42-43, *with* Def.'s Ans. Compl. Affirmative Defenses (Docket No. 21) ("Ans.") ¶¶ 31, 42-43), and "substantial," as it is the gravamen of MPEG's unjust enrichment claim. *Gunn*, 133 S. Ct. at 1065. Finally, there is no reason to believe that resolution of the unjust enrichment claim would disturb the congressionally approved balance between federal and state courts. In fact, ensuring that patent claims masquerading as unjust enrichment claims are litigated in federal court would be consistent with, rather than undermine, Congress's jurisdictional design. *See* 28 U.S.C. § 1338. And it would be the rare *bona fide* unjust enrichment claim that would, like MPEG's claim here, turn on a determination of infringement, as the plaintiff would have to be able to show its standing to sue independent of patent ownership. *See Grable*, 545 U.S. at 315.

On the subject of standing, and despite MPEG's argument to the contrary (*see* Pl.'s Mem. 1, 9), the fact that it would not have standing to bring a pure patent infringement claim as a purportedly non-exclusive licensee, *see Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007); *Princeton Dig. Image Corp. v. Hewlett-Packard*, No 12-CV-6973 (RJS), 2013 WL 1454945, at *5 (S.D.N.Y. Mar. 21, 2013), does not call for a different result. To be sure, MPEG's standing (which is undisputed) derives not from the Patent Act directly, but from its administration of the patent pool — a service that provides value to patent holders and manufacturers alike by reducing the transaction costs associated with the use of multiple patents and for which the administrator deserves to be compensated. *Cf. Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) (holding that an exclusive licensing agent for distribution of copyrighted material — a position much like a patent pool administrator — had

standing to bring claims of direct infringement under the Copyright Act). But the mere fact that MPEG's standing is derived from something other than the Patent Act does not mean that it could prove its unjust enrichment claim without "necessarily" proving patent infringement.

One wrinkle remains: whether the owners of the underlying patents are necessary parties under the terms of Rule 19 of the Federal Rules of Civil Procedure. [2] As a general rule, where an *exclusive* licensee brings suit to enforce a patent right, the patent holder must generally be joined in the suit as a necessary party (unless the party bringing the suit is vested with "all substantial rights," including the right to sue for infringement). *See IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1325 (Fed Cir. 2007); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876 (Fed. Cir. 1991); *Tele-Guia Talking Yellow Pages,Inc. v. Cablevision Sys. Corp.*, No. 07-CV-3948 (DLC), 2007 WL 3224573, at *3 (S.D.N.Y. Oct. 31, 2007). Here, of course, MPEG alleges that it is merely a "*non-exclusive* licensee" and it sues for unjust enrichment, not patent infringement. (Pl.'s Mem. 9, 11 (emphasis added)). Nevertheless, the patent holders presumably share an interest in seeing their patents adjudicated (as determining the unjust enrichment claim would necessarily require), and TAIS ought to be spared the prospect of "multiple suits and duplicate liability." *IpVenture*, 503 F.3d at 1325. Accordingly, MPEG is directed to show cause in writing, in a memorandum of law to be filed **within three weeks** of this Opinion and Order and not to exceed twenty pages, why its unjust enrichment claim should not be dismissed, pursuant to Rule 19, for failure to join a necessary party. (Further, with its memorandum of law, MPEG shall submit the original licensing

---

[2] The *Minden* Court did not address the issue of joinder, perhaps because, under the terms of the relevant contracts, the licensing agent had been granted authority to pursue litigation against unauthorized use of the copyrighted material. *See* 795 F.3d at 1000.

9

agreement or agreements between or among itself and the patent owners in the patent pool.)[3] Should MPEG file such a memorandum, TAIS may respond, in a memorandum of law not to exceed twenty pages, **within two weeks**; any reply, not to exceed eight pages, shall be filed **within one week**.

### THE MOTION TO DISMISS MPEG'S CLAIMS AGAINST TACP

The Court turns, then, to TAIS's motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims against TACP on the ground that it no longer exists and lacks the capacity to be sued. Pursuant to Rule 17(b)(3), a limited liability company's capacity to sue or to be sued is governed by the law of the forum state — here, New York. There is some question as to whether Rule 17(b) incorporates choice of law rules, *see Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1161 (S.D.N.Y. 1995) (citing cases), in which case the law of New Jersey, where TACP was organized and based (Compl. ¶ 4), might apply. But the Court need not decide that question, as the law of New York and New Jersey with respect to the effects of a merger on a limited liability company are identical. *Compare* N.Y. Ltd. Liab. Co. Law § 1004(a), *with* N.J. Stat. Ann. § 42:2B-20(g).[4] In each case, in the event of a merger, all rights and property are vested in the surviving entity, and "all debts, liabilities and duties of each of those domestic limited liability companies and other

---

[3]     Alternatively, by the same date, MPEG may amend the Complaint to include the relevant patent holders as Plaintiffs.

[4]     N.J. Stat. Ann. § 42:2B-20, the statute that governed mergers at the time TACP merged into TAIS, has since been repealed and replaced by Section 42:2C-77. (*See* Pl.'s Reply 12-13). The later statute explicitly states that, upon merger, "each constituent organization that merges into the surviving organization ceases to exist as a separate entity." N.J. Stat. Ann. § 42:2C-77(a)(2). To the extent relevant here, the amendment does not appear to have substantively changed the statute. *See generally* N.J. Assem., 215th Leg., Reg. Oversight & Gaming Comm. Statement, A.B. 1543 (Jan. 30, 2012).

business entities that have merged or consolidated shall attach to the surviving or resulting domestic limited liability company or other business entity, and may be enforced against it to the same extent as if the debts, liabilities and duties had been incurred or contracted by it." *Id.* It follows, as courts have consistently held (many under analogous Delaware law, *see* Del. Code Ann. tit. 6, § 18-209(g)), that a limited liability company that merges into another one ceases to exist and that claims brought against that company should be dismissed. *See, e.g.*, *Integrated Voting Sols., Inc. v. Election Sys. & Software, LLC*, No. 14-CV-35 (GSA), 2014 WL 3563363, at *1-2 (E.D. Cal. July 17, 2014) (acknowledging that "under Delaware law, when LLCs merge, the disappearing company . . . ceases to exist and the surviving company . . . succeeds to the disappearing company's rights and liabilities"); *Parker v. Dean Transp. Inc.*, No. 13-CV-2621 (BRO) (VBKX), 2013 WL 7083269, at *12 (C.D. Cal. Oct. 15, 2013) (noting that "[a]ccording to governing Delaware law," a merged entity "lacks the capacity to be sued"); *Damon Alarm Corp. v. Am. Dist. Tel. Co.*, 304 F. Supp. 83, 84 (S.D.N.Y. 1969) ("The Delaware law provides that when a merger becomes effective the separate existence of all corporations except the survivor shall cease to exist.  Consequently, the moving defendant no longer exists and the action cannot be maintained against it." (citations omitted)); *State ex rel. Richman v. Nat'l Power & Light Co.*, 16 N.J. 486, 490-91 (1954) ("[T]here is no necessity for the continuance of the existence of the merged corporation for purposes of suit."); *see also Frontiers Unlimited, LLC v. Greenstein*, 977 N.Y.S.2d 666, 2013 WL 4822898, at *2 (Sup. Ct. Sept. 9, 2013) (noting that while a merged entity may not have had standing to sue, the surviving entity acquired the

capacity to sue to enforce a contract under New York law); *accord Brach v. Levine*, 957 N.Y.S.2d 263, 2012 WL 2899021, at *3 (Sup. Ct. July 16, 2012).[5]

Here, there can be no dispute that TACP merged into TAIS on or about February 14, 2011, and thus ceased to exist as an entity that could sue or be sued. Indeed, the Complaint itself alleges that TACP "*was* a limited liability company" until that date, when it "merged with and into TAIS with TAIS as the surviving entity." (Compl. ¶ 4 (emphasis added); *see also id.* ¶¶ 23-25; Ans. ¶ 4). Inexplicably, MPEG all but denies those allegations in its memoranda of law. (*See, e.g.*, Pl.'s Reply 12-13 (arguing that TAIS presented no proof of the merger or the terms, conditions, and effects of the merger and that "nowhere" does the Complaint "allege that TACP ceased to exist")). A plaintiff, however, may not amend its complaint "by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *See, e.g.*, *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n. 8 (S.D.N.Y. 2013). Moreover, and in any event, TAIS has provided printouts from the public records of both New Jersey and New York — of which this Court may take judicial notice — indicating that TACP is a merged, defunct company. *See, e.g.*, *Vasquez v. City of N.Y.*, No. 99-CV-4606 (DC), 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (stating that, in deciding a motion to dismiss, courts may take judicial notice of matters of public record); *see also, e.g.*, *Williams v. City of N.Y.*, No. 07–CV-3764 (RJS), 2008 WL 3247813, at *2 n. 3 (S.D.N.Y. Aug.7, 2008) (taking judicial notice of

---

[5] *Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150 (N.J. 1983), the only case upon which MPEG relies that actually involved a merger (as opposed to dissolution of a limited liability company) does not suggest, let alone hold, otherwise. (*See* Pl.'s Reply 13). In that case, the lower courts had "found that the [surviving corporation] assumed all of [the merged corporation's] liabilities in their merger," and no party appears to have challenged the merged corporation's status as a named defendant. *Ventron Corp.*, 468 A.2d at 156. Moreover, on appeal, the New Jersey Supreme Court observed that "[o]nly Ventron" and another entity "remain[ed] in existence" and therefore "affirm[ed] *that portion* of the . . . judgment that holds *them* . . . liable." *Id.* at 166 (emphasis added).

the plaintiff's incarceration based on the inmate lookup website of the New York State Department of Corrections and Community Supervision). Accordingly, MPEG's claims against TACP must be and are dismissed on the ground that TACP is not an entity that can be sued.

## CONCLUSION

The Court has considered MPEG's remaining arguments, both in favor of remand and in opposition to dismissal of its claims against TACP, and finds them to be without merit. Accordingly, and for the reasons stated above, MPEG's motion to remand is DENIED, and TAIS's motion to dismiss all claims against TACP is GRANTED. Further, in accordance with the directions set forth above, MPEG is ordered to show cause why its complaint should not be dismissed for failure to join a necessary party or parties — namely, the underlying patent owner or owners.

The Clerk of Court is directed to terminate TACP as a party and to terminate Docket Nos. 11 and 24.

SO ORDERED.

Date:  October 29, 2015
       New York, New York

_____
JESSE M. FURMAN
United States District Judge